**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE BRASKEM, S.A., SECURITIES
LITIGATION

Civil Action No. 15-CV-5132-PAE

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated September 14, 2017 (the "Settlement" or the "Stipulation"), is made and entered into between Boilermaker-Blacksmith National Pension Trust ("Lead Plaintiff" or "Boilermakers"), on behalf of itself and each of the Settlement Class Members (as defined below), and Braskem, S.A. ("Braskem") and Carlos Fadigas ("Fadigas") (collectively "Defendants"), by their undersigned counsel and subject to the approval of the United States District Court for the Southern District of New York, pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.

This Settlement is intended by the Settling Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Released Claims as against the Released Parties and result in the complete dismissal of this Action (as those terms are defined below) with prejudice, upon and subject to the terms and conditions herein.

**WHEREAS:**

A. All terms with initial capitalization not otherwise defined in the text hereof shall have the meanings ascribed to them in paragraph 1 below.

B. On July 1, 2015, plaintiff Douglas W. Peters filed a class action complaint in the United States District Court for the Southern District of New York.

C.      On September 8, 2015, the District Court consolidated the case with related actions and appointed Boilermakers to serve as lead plaintiff.

D.      On November 6, 2015, Lead Plaintiff filed the Consolidated Class Action Complaint ("CAC") asserting securities fraud claims against Braskem and Fadigas, as well as Bernardo Afonso de Almeida Gradin ("Gradin"), Marcela Aparecida Drehmer Andrade ("Drehmer"), Mario Augusto da Silva ("da Silva"), and Odebrecht S.A. ("Odebrecht") (collectively, the "CAC Defendants").

E.      On December 21, 2015, the CAC Defendants, other than Odebrecht,[1] moved to dismiss the CAC. Plaintiff filed its opposition to the motions to dismiss on February 9, 2016.

F.      Lead Plaintiff thereafter sought leave to amend the CAC, which the court granted on April 18, 2016.

G.      On May 20, 2016, Lead Plaintiff filed the Second Amended Consolidated Class Action Complaint ("SAC"). The SAC named Braskem, Fadigas, Gradin, and Odebrecht (collectively, the "SAC Defendants") as defendants. Drehmer and da Silva were not named in the SAC.

H.      On July 6, 2016, the SAC Defendants, other than Odebrecht, moved to dismiss the SAC. Plaintiff filed its opposition on August 22, 2016 and replies were filed on September 21, 2016.

I.      On October 17, 2016, oral argument was held on the then-pending motions to dismiss

---

[1] Odebrecht did not first appear in this action until October 13, 2016. In addition to joining the arguments made by the other SAC Defendants, Odebrecht filed its own motion to dismiss on November 14, 2016 which Plaintiff opposed on December 16, 2016. Pursuant to the Court's order on the SAC Defendants' motions to dismiss, Odebrecht was dismissed on jurisdictional grounds.

J.      On March 30, 2017, the Court entered an Opinion and Order granting in part and denying in part the SAC Defendants' motions to dismiss. The Court dismissed both Odebrecht and Gradin from the case and dismissed certain of Lead Plaintiff's claims against the remaining Defendants, but denied the motion to dismiss Lead Plaintiff's claims against Braskem and Fadigas to the extent based on allegations that Braskem's disclosures about naphtha pricing in its Form 6-K filings in 2010 and Form 20-F filings for the years 2010–2013 were misleading due to the failure of Braskem to disclose the influence of an alleged bribery scheme on that pricing.

K.      On April 17, 2017, the Parties filed, and the Court approved, a Rule 26(f) Civil Case Management Plan and Scheduling Order. ECF Nos. 113-114.

L.      On May 1, 2017, the Parties served Initial Disclosures. On May 12, 2017, the parties served document requests, including Lead Plaintiff's First Request for the Production of Documents, and Defendants' First Request for the Production of Documents. Responses and objections to these requests were served on June 12, 2017.

M.      On May 15, 2017, Defendants filed their answer. ECF No. 115.

N.      On May 19, 2017, Lead Plaintiff served a Second Request for the Production of Documents. Responses and objections to this request were served on June 19, 2017.

O.      On June 12, 2017, the parties entered into a Stipulation and (Proposed) Order Governing Confidentiality of Discovery Material, which the Court approved on June 16, 2017. ECF No. 116 ("Stipulation of Confidentiality").

P.      Thereafter, the parties agreed to participate in a mediation of the Action.

Q.      On July 19, 2017, following a mediation session held before mediator David Geronemus, Esq. of Judicial Arbitration and Mediation Services ("JAMS"), the Parties agreed, in

principle, to settle the Action for $10 million, subject to the negotiation of a mutually acceptable written settlement agreement and to the production of certain confirmatory discovery.

R.      Shortly thereafter, the parties engaged in said discovery, including the production by Defendants of certain documents responsive to Plaintiff's First Request for Production of Documents as well as supplemental disclosures pertaining to government filings, all of which was designated as Confidential in accordance with the Stipulation of Confidentiality.

S.      Defendants deny any liability to Lead Plaintiff and the Settlement Class, and this Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have asserted. Lead Plaintiff and Defendants recognize, however, that the Action has been prosecuted by Lead Plaintiff and Lead Counsel and defended by Defendants and Defendants' Counsel in good faith and in compliance with Rule 11 of the Federal Rules of Civil Procedure, that the Action is being voluntarily settled after receiving advice of counsel, and that the Settlement, as embodied herein, is fair, reasonable, and adequate. This Settlement shall not be construed or deemed to be a concession by Lead Plaintiff, or any Settlement Class Member, of any infirmity in the claims asserted in this Action.

T.      Lead Counsel has conducted an extensive investigation into the claims and the underlying events and transactions alleged in the Complaint, including the maximum amount of damages recoverable under the theory of fraud upheld by the Court. Based upon this investigation, and taking into consideration the immediate and significant monetary benefit the Settlement Class Members will receive from the Settlement, weighed against the risks of litigation, the Lead Plaintiff and Lead Counsel have concluded that the terms and conditions of

4

this Settlement, as embodied herein, are fair, reasonable, and adequate to Lead Plaintiff and to the other Settlement Class Members, and in their best interests, and have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Settlement.

NOW THEREFORE, without any admission or concession on the part of Lead Plaintiff of any lack of merit of the Action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by Defendants, it is hereby STIPULATED AND AGREED, by and among the Settling Parties, through their respective counsel, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in consideration of the benefits flowing to Lead Plaintiff and the Settlement Class and Defendants and the Released Parties from the Settlement, that all Released Claims as against the Released Parties and all Settled Defendants' Claims, shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

## DEFINITIONS

1.      As used in this Settlement the following terms shall have the meanings specified below:

a.      "Action" means the consolidated action pending in this Court under the caption *In re Braskem Securities Litigation*, Case No. 15-cv-5132-PAE.

b.      "ADR" means American Depositary Receipts, as that term is used by the United States Securities and Exchange Commission in Exchange Act Release No. 34-29226 (May 23, 1991), which construes the term to refer to both American depositary receipts and corresponding American depositary shares.

c.      "Authorized Claimant" means a Settlement Class Member who submits a timely and valid Proof of Claim Form to the Claims Administrator, that satisfies all the

requirements set forth on the Proof of Claim Form in accordance with the requirements established by the Court, and who, subject to Court approval, will receive a payment from the Net Settlement Fund.

        d.     "Claim" means a completed and signed Proof of Claim Form submitted by a Settlement Class Member, or on their behalf, to the Claims Administrator in accordance with the instructions on the Proof of Claim Form.

        e.     "Claimant" means a person or entity that submits a claim.

        f.     "Claims Administrator" means the firm retained by Lead Plaintiff, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer Claims.

        g.     "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

        h.     "Class Period" means the period from July 15, 2010 through March 11, 2015, both dates inclusive.

        i.     "Complaints" means the CAC filed in the Action, the SAC filed in the Action, the Class Action Complaint for Violation of the Securities laws filed by Douglas W. Peters (ECF No. 1) in the Action prior to its consolidation with *Vitolo v. Braskem S.A.*, No. 15-cv-05183 (the "Vitolo Action"), and the Class Action Complaint for Violations of the Federal Securities Laws filed by Carmine Vitolo in the Vitolo Action (ECF No. 1), prior to its consolidation with this Action.

        j.     "Court" means the United States District Court for the Southern District of New York.

k.      "Defendants" means Braskem and Fadigas.

l.      "Defendants' Counsel" means the law firm of Covington & Burling LLP.

m.      "Effective Date" means the first date by which all of the following shall have occurred: (1) the Court has entered the Preliminary Approval Order, substantially in the form annexed hereto as Exhibit A; (2) the Settlement Amount has been paid into the Escrow Account; (3) the Court has approved all the material terms set forth in this Stipulation and the proposed settlement embodied herein, following the provision of Settlement Notices to the Settlement Class and a Final Approval Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (4) the time to exercise the termination rights provided in this Settlement have expired or otherwise been waived; and (5) the Court has entered the Judgment, substantially in the form annexed hereto as Exhibit B, which has become Final.

n.      "Escrow Account" means one or more accounts located at the Escrow Agent that are maintained to hold the Settlement Fund, which accounts shall be created, controlled and maintained exclusively by Lead Counsel, acting as agent for Lead Plaintiff and the Settlement Class, and shall be deemed to be in the custody of the Court and remain subject to the jurisdiction of the Court until such time as the Settlement Fund is distributed or returned pursuant to the terms of this Settlement and/or further order of the Court.

o.      "Escrow Agent" means Cohen Milstein Sellers & Toll PLLC, which shall be responsible for overseeing, investing, safeguarding, and distributing the Settlement Fund held in the Escrow Account, pursuant to the terms of this Settlement and any orders entered by the Court, and acting as agent for Lead Plaintiff and the Settlement Class.

p.      "Final" when referring to an order or judgment means: (1) that the time for appeal or appellate review of the order or judgment has expired, and no appeal has been taken; or

(2) if there has been an appeal, (i) that the appeal has been decided by all appellate courts without causing a material change in the order or judgment; or (ii) that the order or judgment has been upheld on appeal and is no longer subject to appellate review by further appeal or writ of *certiorari*.

        q.      "Final Approval Hearing" means the hearing set by the Court in the Preliminary Approval Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to consider, among other things, approval of the Settlement.

        r.      "Judgment" means the proposed order and final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure approving the Stipulation and the proposed settlement embodied herein.

        s.      "Lead Counsel" means Cohen Milstein.

        t.      "Lead Plaintiff" means Boilermakers.

        u.      "Litigation Expenses" means the reasonable costs and expenses incurred by Lead Counsel in connection with commencing and prosecuting the Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund. Litigation Expenses may also include reimbursement of the reasonable costs and expenses (including lost wages) of Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(4).

        v.      "Net Settlement Fund" means the Settlement Fund less: (1) any Taxes; (2) any Notice and Administration Costs; and (3) any attorneys' fees and Litigation Expenses awarded by the Court.

        w.      "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, substantially in the form attached hereto as Exhibit A-1, which is to be sent to

members of the Settlement Class.

x.     "Notice and Administration Costs" means (1) the costs, fees and expenses that are reasonably incurred by the Claims Administrator, as described herein and in the Preliminary Approval Order, in connection with (i) providing Notice to the Settlement Class and (ii) administering the claims process; (2) any Tax Expenses incurred by the Claims Administrator; and (3) the costs, fees and expenses that are reasonably incurred by the Escrow Agent.

y.     "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund prepared by Lead Counsel, in conjunction with Lead Plaintiff's damages consultant, as set forth in the Notice (or any other plan for the allocation of the Net Settlement Fund among Authorized Claimants that Lead Counsel may propose), that the Court may approve.

z.     "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and the proposed settlement embodied therein.

aa.     "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit A-3, that a Settlement Class Member must complete should that Settlement Class Member seek to share in a distribution of the Net Settlement Fund, subject to entry of a Plan of Allocation and a Class Distribution Order that have both become Final.

bb.     "Released Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, penalties, expenses or liability whatsoever, whenever or wherever incurred), whether based on federal, state, local,

9

foreign, statutory, or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class, individual, or otherwise in nature, whether personal or subrogated, whether suspected or unsuspected, including both known claims and Unknown Claims, that have (1) been asserted in this Action by Lead Plaintiff against any of the Released Parties, or (2) that have been or could have been asserted in this Action or any forum by Lead Plaintiff or any Settlement Class Member against any of the Released Parties which in any way, directly or indirectly, arise out of, are related to, or are based upon (i) the purchase, sale, transfer, acquisition or ownership of Braskem ADRs during the Class Period and (ii) any allegations, transactions, facts, matters or occurrences, representations or omissions that were or could have been alleged, involved, set forth, or referred to in any of the Complaints in this Action, including (without limitation) the alleged making of improper payments in exchange for naphtha pricing concessions from Petroleo Brasileiro S.A. ("Petrobras"). Notwithstanding the foregoing, "Released Claims" does not include claims relating to the enforcement of the Settlement or its terms.

cc.    "Released Claim" means any one of the Released Claims.

dd.    "Released Parties" means the CAC Defendants; each of their respective current and former officers, directors, employees, agents, servants, representatives, parents, subsidiaries, affiliates, controlled persons, controlling persons, successors, predecessors, assigns, assignees, attorneys, accountants, advisors, insurers, family members and partners; and each of their respective heirs, executors, administrators, legal representatives, successors and assigns. For the avoidance of doubt, the parties expressly acknowledge and agree that the definition of "Released Parties" includes, in addition to the Defendants (as defined herein), the following

individuals and entities previously named as defendants in the CAC: Marcela Drehmer, Mario da Silva, Bernardo Gradin, and Odebrecht S.A. and their respective related parties as listed above.

ee.    "Released Party" means any one of the Released Parties.

ff.    "Settled Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory, or common law, or any other law, rule, or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by Defendants, and all persons and/or entities claiming by, through, or on behalf of them, against Lead Plaintiff, any Settlement Class Member, or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in this Action. "Settled Defendants' Clams" does not include claims by Defendants or the Released Parties relating to the enforcement of the Settlement or its terms.

gg.    "Settlement Amount" means ten million U.S. dollars ($10,000,000).

hh.    "Settlement Class" means all persons or entities who purchased or otherwise acquired a legal or beneficial ownership interest in Braskem ADRs between July 15, 2010 and March 11, 2015, inclusive. Excluded from the Settlement Class are: (1) Defendants and members of the immediate family of any Defendant; (2) any entity in which any Defendant has, or had during the Class Period, a controlling interest; (3) the officers and directors of Braskem during the Class Period; and (4) the legal representatives, agents, executors, heirs, successors, or assigns of any of the foregoing excluded persons or entities who assert an interest in Braskem ADRs through or on behalf of any such excluded persons or entities. Also excluded from the Settlement Class are any putative Settlement Class Members who exclude themselves by filing a

request for exclusion in accordance with the requirements set forth in the Notice of Pendency of Class Action and Proposed Settlement.

   ii. "Settlement Class Member" means a person or entity that is a member of the Settlement Class and is not otherwise excluded from the Settlement Class pursuant to its definition.

   jj. "Settlement Fund" means the Settlement Amount plus any and all income and gains earned thereon, less any losses incurred thereon, after it is deposited into the Escrow Account.

   kk. "Settling Parties" means Defendants and Lead Plaintiff, on behalf of itself and the Settlement Class.

   ll. "Settlement Notices" means the Notice and Summary Notice.

   mm. "Summary Notice" means the Summary Notice of Pendency of Class Action and Proposed Settlement, substantially in the form attached hereto as Exhibit A-2, to be published as set forth in the Preliminary Approval Order.

   nn. "Taxes" means any and all taxes, duties and similar charges (including any estimated taxes, withholdings, interest or penalties and interest thereon) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon the Released Parties and/or each of their respective counsel with respect to (1) any income and gains earned by the Settlement Fund for any period during which the Settlement Fund may be finally determined to not qualify as a Qualified Settlement Fund (within the meaning contemplated in ¶ 17 herein) for federal, state or local income tax purposes or (2) any distribution of any portion of the Settlement Fund to Authorized Claimants and other persons entitled hereto pursuant to this

Settlement, excluding any portion of the Settlement Fund returned to Defendants as a result of the termination of this Settlement pursuant to ¶¶ 48-50.

oo.    "Tax Expenses" means any expenses and costs reasonably incurred by the Claims Administrator in connection with determining the amount of, and paying, any Taxes (including, without limitation, reasonable expenses of tax attorneys and/or accountants and/or other advisors and reasonable expenses relating to the filing of or failure to file all necessary or advisable tax returns).

pp.    "Unknown Claims" means any and all Released Claims that Lead Plaintiff or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, and any of the Settled Defendants' Claims which Defendants do not know or suspect to exist in his, her or its favor, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Released Claims and Settled Defendants' Claims, Lead Plaintiff and Defendants stipulate and agree that upon the Effective Date, Lead Plaintiff and Defendants shall each, for themselves and all persons claiming by, through, or on behalf of them, expressly waive, and each Settlement Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and Defendants acknowledge, and Settlement Class Members and

Defendants' successors and assigns and any persons or entities claiming through or on behalf of Defendants shall, by operation of law, be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settled Defendants' Claims were separately bargained for and was a material element of this Settlement.

## SETTLEMENT CONSIDERATION

2.      Braskem shall pay or cause to be paid ten million U.S. dollars ($10,000,000) into the Escrow Account within ten business days after the first date on which both (a) the Preliminary Approval Order has been entered by the Court, and (b) Lead Counsel has provided Defendants' Counsel with full and complete account information necessary for such payment (including wiring instructions) and a tax identification number for the Settlement Fund. If the Settlement Amount is not deposited into the Escrow Account by such date, Lead Plaintiff reserves the right to either (i) move to enforce the terms of this Settlement, including seeking interest on any unpaid amount; or (ii) terminate the Settlement.

3.      The Settlement Amount as set forth above in ¶ 2 is inclusive of all Lead Counsel's attorneys' fees and Litigation Expenses that may be awarded by the Court, and all Notice and Administration Costs and Taxes, and is the total, full and final amount of all payments to be paid by, or on behalf of, Defendants for the benefit of themselves and the Released Parties, to Lead Plaintiff, Settlement Class Members, Lead Counsel or any other person or entity acting or purporting to act for the benefit of the Settlement Class in this Action, in connection with the Stipulation and the proposed settlement embodied herein.

4.      Immediately upon deposit of the Settlement Amount into the Escrow Account, Defendants and the Released Parties shall have no responsibility for the Settlement Fund, including for any loss of principal.

**CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA") NOTICE**

5.      Defendants shall serve any notice of the Settlement required pursuant to CAFA, 28 U.S.C. § 1715(b), (the "CAFA Notice") within the time period set forth in said statute and shall, within three (3) business days after service of such CAFA Notice, certify to Lead Counsel that such service has been made. The Settling Parties agree that they will request, pursuant to 28 U.S.C. § 1715(d), that the Final Approval Hearing be scheduled for no earlier than ninety (90) days following the deadline for Defendants to serve the CAFA Notice as stated in this paragraph. The parties agree that any delay by Defendants in timely serving the CAFA Notice will not provide grounds for delay of the Final Approval Hearing or entry of the Judgment. Defendants shall be responsible for all costs and expenses related to the creation and service of the CAFA Notice.

**RELEASES**

6.      The obligations incurred pursuant to this Settlement shall be in full and final disposition of the Action as against the Defendants, and shall fully and finally release any and all Released Claims as against all Released Parties and shall also release all of the Settled Defendants' Claims. The Judgment shall, among other things, provide for the dismissal with prejudice of the Action against the Defendants, without costs to any party, except for the payments as expressly provided for herein.

7.      Pursuant to the Judgment, upon the Effective Date, Lead Plaintiff and each Settlement Class Member, on behalf of themselves, and their respective past and present directors, officers, employees, agents, trustees, fiduciaries, guardians, servants, consultants, underwriters, attorneys, advisors, representatives, estate trustees, heirs, executors, administrators, predecessors, successors and assigns, and any other person claiming by, through or on behalf of

them, shall be deemed by operation of law to (a) have released, waived, discharged and dismissed each and every of the Released Claims against the Released Parties; (b) forever be enjoined from commencing, instituting or prosecuting any or all of the Released Claims against any of the Released Parties; and (c) forever be enjoined from instituting, continuing, maintaining or asserting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any person or entity who may claim any form of contribution or indemnity from any of the Released Parties in respect of any Released Claim.

8.      Pursuant to the Judgment, upon the Effective Date, each of the Defendants, on behalf of themselves, and their respective past and present directors, officers, employees, agents, trustees, fiduciaries, guardians, servants, consultants, underwriters, attorneys, advisors, representatives, estate trustees, heirs, executors, administrators, predecessors, successors and assigns, and any other person claiming by, through or on behalf of them, shall be deemed by operation of law to (a) have released, waived, discharged and dismissed each and every of the Settled Defendants' Claims; (b) forever be enjoined from commencing, instituting or prosecuting any or all of the Settled Defendants' Claims; and (c) forever be enjoined from instituting, continuing, maintaining or asserting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any person or entity who may claim any form of contribution or indemnity in respect of any Settled Defendants' Claim.

## USE AND TAX TREATMENT OF THE SETTLEMENT FUND

9.      The Settlement Fund shall be held and invested in the Escrow Account as provided in ¶ 10 hereof. Upon the Effective Date, any interest earned on the Settlement Fund

shall be for the benefit of the Settlement Class. If the Effective Date does not occur and the Settlement is terminated, the Settlement Fund shall be returned to Defendants pursuant to the terms of ¶ 50 hereof.

10.     The Escrow Agent shall invest any Settlement Funds in excess of $200,000 in United States Agency or Treasury Securities having maturities of 180 days or less, money market mutual funds comprised of investments secured by the full faith and credit of the United States government, or an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC"), and shall collect and reinvest all interest accrued thereon. Any Settlement Funds in an amount equal to or less than $200,000 may be held in an interest-bearing bank account insured by the FDIC. The Released Parties shall have no responsibility for, interest in, or liability with respect to the investment decisions of the Escrow Agent. The Settlement Fund shall bear all risk of loss related to the investment of the Settlement Amount pursuant to the terms set forth in this paragraph.

11.     The Escrow Agent shall not disburse the Settlement Fund from the Escrow Account except as provided in this Settlement. All Settlement Funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the Settlement Funds are either distributed or returned to Defendants pursuant to the terms and conditions of this Settlement.

12.     Subject to the terms and conditions of this Settlement, the Settlement Fund shall be distributed to pay: (i) Taxes; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court. The balance remaining in the Settlement Fund (the Net Settlement Fund) after payment of items (i)-(iii), shall be distributed to Authorized Claimants as provided herein.

13.   Prior to the Effective Date, the Escrow Agent, without further approval of Defendants or the Court, may pay from the Settlement Fund up to $200,000 in Notice and Administration Costs actually and reasonably incurred. Prior to the Effective Date, payment by the Escrow Agent of any Notice and Administration Costs exceeding $200,000 shall require notice to, and agreement from, Defendants, through Defendants' Counsel. Subsequent to the Effective Date, without further approval by Defendants, any Released Parties or the Court, the Escrow Agent may pay from the Settlement Fund all reasonable and necessary Notice and Administration Costs in excess of any amount paid prior to the Effective Date. Defendants, Defendants' Counsel, and the Released Parties shall not have any responsibility for, nor any liability with respect to, any Notice and Administration Costs incurred or paid, and shall have no responsibility for, and no liability with respect to, any acts or omissions of the Claims Administrator, Lead Counsel, the Escrow Agent, or their respective agents, with regard to any Notice and Administration Costs.

14.   All Taxes shall be considered to be a cost of administration of the proposed settlement embodied in this Stipulation and shall be timely paid out of the Settlement Fund. The Claims Administrator shall be solely responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund, and the Escrow Agent is authorized to permit the Claims Administrator to withdraw from the Settlement Fund, without prior order of the Court or approval of Defendants, such amounts as are necessary to pay Taxes.

15.   After (i) the Effective Date occurs and (ii) entry by the Court of a Class Distribution Order that has become Final, the Claims Administrator shall, subject to the supervision of Lead Counsel, distribute the Net Settlement Fund to Authorized Claimants in accordance with the terms of such Final Class Distribution Order; provided, however, that any

amounts in the Escrow Account necessary for payment of Taxes, attorneys' fees and Litigation Expenses awarded by the Court and/or Notice and Administration Costs shall remain in the Escrow Account for such purpose. The Escrow Agent is authorized to permit the Claims Administrator to make the foregoing distributions.

16.   If all conditions of the Settlement are satisfied and the Effective Date has occurred, no portion of the Settlement Fund will be returned to Braskem, irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If any portion of the Net Settlement Fund remains following distribution pursuant to ¶ 29 and is of such an amount that in the determination of the Claims Administrator, in consultation with Lead Counsel, it is not cost-effective or efficient to redistribute such amount to the Settlement Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under United States Internal Revenue Code Section 501(c)(3), as approved by the Court.

17.   The Settling Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and Treasury Regulation § 1.468B-1. The Settling Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Claims Administrator shall make reasonable efforts to ensure that the Settlement Fund at all times complies with applicable provisions of the Code and Treasury regulations in order to maintain its treatment as a Qualified Settlement Fund. To this end, the Judgment shall provide that the Settlement Fund is approved by the Court as a Qualified

Settlement Fund and the Claims Administrator shall make reasonable efforts to ensure that the Escrow Agent complies with all applicable provisions of the Code and Treasury regulations in order to maintain the treatment of the Settlement Fund as a Qualified Settlement Fund. The Settling Parties agree that the Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § l.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by ¶ 14 herein. Upon written request, Braksem will provide to the Claims Administrator the statement described in Treasury Regulation § 1.468B-3(e). The claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation-back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

18.     The taxable year of the Settlement Fund shall be the calendar year in accordance with Treasury Regulation § 1.468B-2(j). The Settlement Fund shall use an accrual method of accounting within the meaning of Section 446(c) of the Code.

19.     All tax returns prepared by the Claims Administrator for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous ¶¶ 17 and 18 and in all events shall reflect that all Taxes on the income and gains earned by the Settlement Fund shall be

paid out of the Settlement Fund as provided herein.

20.     The Released Parties shall not have any responsibility for, and no liability with respect to, payment of any Taxes, and shall have no responsibility for, and no liability with respect to, the acts or omissions of the Claims Administrator, Lead Counsel, the Escrow Agent, or their agents, with regard to Taxes. Defendants and Defendants' Counsel shall notify the Escrow Agent promptly if they receive any notice of any claim for Taxes relating to the Settlement Fund, but shall otherwise have no responsibility for, or liability with respect to, the administration or distribution of the Settlement Fund or any related acts or omissions of the Claims Administrator, Lead Counsel, or the Escrow Agent. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Settlement with regard to Taxes.

## CLASS CERTIFICATION

21.     Solely for purposes of this Stipulation and the settlement embodied herein and for no other purposes, the Settling Parties stipulate and agree to: (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class; (b) certification of Lead Plaintiff as class representative; and (c) appointment of Lead Counsel as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. Following execution of this Settlement, Lead Plaintiff shall apply to the Court for entry of the Preliminary Approval Order, which will certify the Action to proceed as a class action solely for purposes of the Stipulation and the proposed settlement embodied herein and for no other purposes.

## PLAN OF ALLOCATION

22.     Subject to entry by the Court of a Class Distribution Order that becomes Final, the

Net Settlement Fund shall be distributed to Authorized Claimants in accordance with a Plan of Allocation, provided that such Plan of Allocation, after appropriate notice thereof to the Settlement Class, has been approved by the Court in an order that has become Final.

23.    The Defendants, the Released Parties, and Defendants' Counsel shall have had no role in the preparation of the Plan of Allocation and shall take no position with respect thereto. Neither Defendants nor the Released Parties shall have any responsibility or liability whatsoever for the Plan of Allocation.

24.    The Plan of Allocation is a matter separate and apart from the proposed settlement between the Settling Parties as embodied in this Stipulation. The Plan of Allocation is not a necessary or material term of this Settlement and it is not a condition of this Settlement that any Plan of Allocation be approved by the Court or that any order approving a Plan of Allocation becomes Final. Any order by the Court or any appellate court with respect to a Plan of Allocation shall not preclude the Judgment from being deemed Final nor shall it prevent the Effective Date from occurring. None of the Settling Parties may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to a Plan of Allocation.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

25.    Lead Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees and Litigation Expenses. Attorneys' fees and Litigation Expenses are not the subject of any agreement between the Settling Parties other than what is set forth in this Settlement.

26.    The Released Parties will take no position on Lead Counsel's request for attorneys' fees or Litigation Expenses, and shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses that the Court may award.

27.    The procedure for and amounts of any award of attorneys' fees and Litigation Expenses, and the allowance or disallowance by the Court thereof, are not necessary or material terms of this Settlement and are not a condition of this Settlement. Lead Counsel shall request that its application for an award of attorneys' fees and Litigation Expenses be considered by the Court separately from (but not prior to) the Court's consideration of the fairness, reasonableness and adequacy of the proposed settlement embodied herein. Any order or proceedings relating to Lead Counsel's request for attorneys' fees or Litigation Expenses, or any appeal from any order relating thereto or reversal or modification thereof, shall not preclude the Judgment from being deemed Final nor shall it prevent the Effective Date from occurring. None of the Settling Parties may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to Lead Counsel's application for attorneys' fees and Litigation Expenses.

28.    Within three (3) business days after entry by the Court of an order awarding Lead Counsel's attorneys' fees and Litigation Expenses (the "Fee and Expense Order"), any awarded attorneys' fees and Litigation Expenses shall be paid to Lead Counsel from the Escrow Account by the Escrow Agent, notwithstanding the existence of or pendency of any appeal or collateral attack on the Settlement or any part thereof or the Fee and Expense Order. In the event that the Effective Date does not occur or the Settlement is terminated pursuant to its terms, or if, as the result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Order is reversed or modified pursuant to a Final court order and attorneys' fees and Litigation Expenses have been paid out of the Escrow Account to any extent, then Lead Counsel shall be obligated and do hereby agree, within ten (10) business days after receiving notice of the foregoing from Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Escrow Account such attorneys' fees and Litigation Expenses that have been paid, plus interest

thereon at the same rate as would have been earned had those sums remained in the Escrow Account.

## ADMINISTRATION OF THE SETTLEMENT

29.     The Claims Administrator, subject to the supervision of Lead Counsel and the jurisdiction of the Court, shall administer and calculate the Claims submitted by Claimants, oversee distribution of the Net Settlement Fund to Authorized Claimants pursuant to a Plan of Allocation approved by the Court in an Order that has become Final and subject to a Class Distribution Order entered by the Court that has become Final, and perform all claims administration procedures necessary or appropriate in connection therewith.

30.     Other than Braskem's obligation to provide its shareholder lists, as provided herein, none of the Released Parties shall have any responsibility for, involvement in, or liability for providing the Settlement Notices to the Settlement Class, the administration of the Settlement or the Claims process, the reviewing or challenging of Claims of Claimants, the implementation of the Plan of Allocation as approved by the Court or the distribution of funds from the Net Settlement Fund. Defendants and Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

31.     Within ten (10) days following the entry of the Preliminary Approval Order, Braskem shall provide or cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator) lists of record holders of Braskem ADRs during the Class Period, to the extent such lists are maintained by its stock transfer agent and reasonably available to Braskem upon request. The lists shall be provided in electronic form or such other form as is reasonably available to Braskem.

32.     The Claims Administrator shall mail the Notice to those Settlement Class

Members who may be identified through the records maintained by or on behalf of Braskem, and shall publish the Summary Notice, pursuant to the terms of the Preliminary Approval Order.

33.     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's share of the Net Settlement Fund based upon the Plan of Allocation approved by the Court. The Claims Administrator, subject to the supervision of Lead Counsel, shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claims submitted in the interests of achieving substantial justice.

34.     Neither Defendants nor any other Released Party shall be permitted to review, contest, or object to any Claim or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.

35.     Any Settlement Class Member who does not timely submit a valid Claim by the deadline set by the Court in the Preliminary Approval Order will not be entitled to receive any distribution from the Net Settlement Fund but will nevertheless be bound by all of the terms of this Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim.

36.     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a.      Each Settlement Class Member shall be required to submit a Proof of Claim Form, substantially in the form attached hereto as Exhibit A-3, supported by such

25

documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

        b.      All Proof of Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Settlement Notices, unless such deadline is extended by Order of the Court. Any Settlement Class Member who fails to submit a Proof of Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Settlement (unless, by Order of the Court, late-filed Claims are accepted), but shall in all other respects be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim. A Proof of Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions set forth on the Proof of Claim Form;

        c.      Each Proof of Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Settlement the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

        d.      Proof of Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, by mail, first class postage pre-paid, to give the Claimant the chance to remedy any curable deficiencies in the Proof of Claim Form submitted

within a period of twenty (20) days after such notice has been mailed. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, by mail, first-class postage pre-paid, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below within twenty (20) days following the mailing of such notice by the Claims Administrator;

        e.     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within the timeframe stated in the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court; and

        f.     The administrative determinations of the Claims Administrator accepting and rejecting Claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Class Distribution Order.

        37.     By submitting a Claim, a Settlement Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the releases provided for in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the Claimant's status as a Settlement Class Member and the validity and amount of their Claim. No discovery shall be allowed on the merits of this Action or this

Settlement in connection with the processing of Proof of Claim Forms. Defendants shall have no right to take any such discovery nor any responsibility to provide such discovery.

38.     The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the later of the Effective Date having occurred; the Court having approved a Plan of Allocation in an order that has become Final; and the Court issuing a Class Distribution Order that has become Final.

39.     Lead Counsel will apply to the Court, with reasonable notice to the Defendants, for a Class Distribution Order, *inter alia*: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding Notice and Administration Costs from the Escrow Account (except to the extent that Court approval is not required as specified herein); and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account in specified increments until, in the determination of the Claims Administrator, in consultation with Lead Counsel, it is no longer economically feasible to distribute the remaining funds, at which time any such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under United States Internal Revenue Code Section 501(c)(3), as approved by the Court; and (iv) such other relief as appropriate.

40.     Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Settlement Class Members. All Settlement Class Members who did not submit a Claim or whose Claim was not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be

permanently barred and enjoined from bringing any action against any Released Party concerning any Released Claim.

41.     All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

## OBJECTIONS AND REQUESTS FOR EXCLUSION

42.     Pursuant to the terms and subject to the conditions set forth in the Preliminary Approval Order, any Settlement Class Member may appear at the Final Approval Hearing and show cause why the Stipulation, and the proposed settlement embodied herein, should or should not be approved as fair, reasonable and adequate and in the best interests of the Settlement Class, or why the Judgment should or should not be entered thereon, and/or to present opposition to the Plan of Allocation or to the application of Lead Counsel for attorneys' fees and reimbursement of Litigation Expenses.

43.     Pursuant to the terms and subject to the conditions set forth in the Preliminary Approval Order, any putative Settlement Class Member may request to be excluded from the Settlement Class.

44.     The Claims Administrator shall scan and electronically send copies of all requests for exclusion in .pdf format (or such other format as shall be agreed) to Defendants' Counsel and to Lead Counsel expeditiously (and not more than two (2) days) after the Claims Administrator receives such a request.

## PRELIMINARY APPROVAL OF THE SETTLEMENT

45.     Promptly after execution of this Settlement, Lead Plaintiff, by and through Lead

Counsel, with Defendants' consent, shall submit this Settlement together with the exhibits annexed hereto to the Court and shall move for entry of the Preliminary Approval Order, among other things, preliminarily approving the Stipulation and the settlement embodied herein, approving the contents and method of distribution of the Notice and Summary Notice, approving the contents of the Proof of Claim Form, and setting a date for the Final Approval Hearing.

## JUDGMENT APPROVING THE SETTLEMENT

46.     Lead Plaintiff, by and through Lead Counsel, with Defendants' consent, shall request that the Court, if it approves the settlement embodied in this Stipulation following the Final Approval Hearing, enter the Judgment, substantially in the form annexed hereto as Exhibit B, pursuant to Rule 54 of the Federal Rules of Civil Procedure.

47.     The Judgment shall contain a bar order, substantially in the form set forth in Exhibit B (the "Bar Order"), that will, upon the Effective Date of the Settlement, permanently bar, extinguish, and discharge any and all claims, actions, suits, cause of action, or demands by any person against the Released Parties, whether for contribution or indemnification or however styled, where the alleged injury consists of or arises from the plaintiff's liability to the Settlement Class or any Settlement Class Member for a claim arising out of or related to the allegations in the Action. The Bar Order shall further provide that:

> a.      Any final verdict or judgment that may be obtained by or on behalf of the Settlement Class or a Settlement Class Member against any person or entity subject to the Bar Order shall be reduced by the greater of: (a) an amount that corresponds to the percentage of responsibility of the Defendants for common damages; or (b) the amount paid on behalf of Defendants to the Settlement Class or Settlement Class Member for common damages.

b.      The Released Parties shall be barred from bringing any claim for contribution or indemnification arising out of or related to any Released Claim against any person, other than a person whose liability has been extinguished by the Settlement.

c.      Notwithstanding anything to the contrary herein, the Bar Order shall not apply to: (i) any claims the Defendants or any other Released Party may have against any insurance carrier for advancement of legal fees or indemnification, or (ii) any claims by a Defendant against any party whose liability to the Settlement Class or any Settlement Class Member for a Released Claim has been extinguished by the Settlement.

## TERMINATION RIGHTS

48.      Defendants and Lead Plaintiff each shall have the right to terminate the Settlement by providing written notice to the other of their election to do so within thirty (30) days of the date on which any of the following occur: (a) the Court declines to enter the Preliminary Approval Order in any material respect; (b) the Court refuses to approve this Settlement or any material term hereof; (c) the Court declines to enter the Judgment in any material respect; (d) the Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (e) the Settlement Amount is not paid in accordance with the terms of ¶ 2. In addition, Defendants may terminate this Settlement in accordance with ¶ 49. Notwithstanding the foregoing, any decision by the Court or any appeals court with respect to an application for attorneys' fees or Litigation Expenses or with respect to a Plan of Allocation or a Class Distribution Order, shall not be considered material to this Settlement, shall not preclude the Judgment from being deemed Final and shall not be grounds for termination. In the event this Settlement is terminated, the provisions of ¶¶ 9, 10, 11, 28, 30, 50 and 51 shall survive such termination. The termination rights set forth herein are not intended to limit or impair the Settling

Parties' rights under the law of contracts of the State of New York with respect to any breach of this Settlement.

49.     Defendants shall have the option to terminate this Settlement in the event that the aggregate number of total shares of Braskem ADRs purchased during the Class Period by persons or entities who would otherwise be entitled to participate in the Settlement as Settlement Class Members, but who timely and validly request exclusion from the Settlement Class in accordance with the requirements set forth in the Notice, equals or exceeds the threshold (the "Opt-Out Threshold") as calculated pursuant to a separate agreement (the "Supplemental Agreement") executed between Lead Counsel and Defendants' Counsel, which is incorporated by reference into this Settlement. The Opt-Out Threshold may be disclosed *in camera* to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the confidentiality of the Opt-Out Threshold.

50.     Except as otherwise provided herein, in the event this Settlement is terminated, this Stipulation, and the settlement embodied herein, shall be without prejudice, and none of its terms shall be effective or enforceable and the fact of the Settlement shall not be admissible in any trial of this Action, and the Settling Parties shall be deemed to have reverted to their respective status in this Action immediately prior to their agreement, in principle, to settle the Action on July 19, 2017, and will in good faith meet and confer as to a schedule for the completion of discovery and other pretrial proceedings and for the trial of this Action, and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if this Settlement and any related orders had not been entered, and any portion of the Settlement Amount previously paid into the Escrow Account, including, but not limited to, any funds

disbursed in payment of attorneys' fees and Litigation Expenses, plus interest thereon at the same rate as would have been earned had those funds remained in the Escrow Account, less any amounts for Taxes paid or owing with respect to interest income and/or gains on the Settlement Amount and/or for Notice and Administration Costs actually incurred and paid or payable, shall be returned by Lead Counsel and/or the Escrow Agent to Defendants within fourteen (14) business days after written notification of such event by Defendants' Counsel to Lead Counsel.

### NO ADMISSION OF WRONGDOING

51.    Whether or not the settlement, as embodied in this Stipulation, is approved by the Court, and whether or not this Settlement is consummated, the fact and terms of this Settlement, including the exhibits annexed hereto and the Supplemental Agreement, the settlement embodied within it, all negotiations, discussions, drafts and proceedings in connection with this Settlement, and any act performed or document signed in connection therewith:

a.    shall not be offered or received against the Released Parties, Lead Plaintiff or the other Settlement Class Members as evidence of, or be deemed to be evidence of, any presumption, concession or admission by any of the Released Parties or by Lead Plaintiff or the other Settlement Class Members with respect to the truth of any fact alleged by Lead Plaintiff or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of the Released Parties;

b.    shall not be offered or received against the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any

Released Party, or against Lead Plaintiff or any of the other Settlement Class Members as evidence of any infirmity in the claims of Lead Plaintiff and the other Settlement Class Members;

        c.      shall not be offered or received against the Released Parties, Lead Plaintiff or the other Settlement Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the foregoing parties, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement; provided, however, that if the Settlement is approved by the Court, the Released Parties may refer to this Settlement to effectuate the protection from liability granted them hereunder;

        d.      shall not be construed against the Released Parties, Defendants' Counsel, Lead Counsel or Lead Plaintiff or the other Settlement Class Members as an admission or concession that the consideration to be paid hereunder represents the amount which could be or would have been recovered after trial; and

        e.      shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiff or the other Settlement Class Members or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

## MISCELLANEOUS PROVISIONS

52.    All of the exhibits attached hereto and the Supplemental Agreement referenced herein are hereby incorporated by reference as though fully set forth herein and are material terms of the Settlement. Notwithstanding the foregoing, in the event that there is a conflict or

inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of this Stipulation shall control.

53.      The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Lead Plaintiff or any other Settlement Class Members in the Action against the Released Parties with respect to all Released Claims. Except in the event of the termination of this Settlement, Lead Plaintiff and Defendants agree not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis. The Settling Parties agree that the Settlement Amount and the other terms of this Settlement were negotiated at arms' length and in good faith by the Settling Parties and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with their respective experienced legal counsel.

54.      This Settlement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their successors-in-interest.

55.      The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

56.      The waiver by one Settling Party of any breach of this Settlement by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement.

57.      This Settlement, the exhibits annexed hereto, and the Supplemental Agreement incorporated by reference herein, constitutes the entire agreement among the Settling Parties concerning the Settlement, and no representations, warranties or inducements have been made to any Settling Party concerning this Settlement other than the representations, warranties and

covenants contained and memorialized in this Settlement.

58.     This Settlement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

59.     Lead Plaintiff agrees that it will use its best efforts to obtain all necessary approvals of the Court required by this Settlement, and Defendants agree to provide such support as may be reasonably requested by Lead Plaintiff or Lead Counsel.

60.     Each signatory to this Settlement represents that he or she has authority to sign this Settlement and any Settlement-related documents on behalf of Lead Plaintiff or Defendants, as applicable, and that such signatory has the authority to take appropriate action required or permitted to be taken pursuant to this Settlement to effectuate its terms.

61.     This Settlement shall be binding upon and shall inure to the benefit of the successors and assigns of the Settling Parties hereto, including all Released Parties and any corporation, partnership, or other entity into or with which any Settling Party hereto may merge, consolidate or reorganize.

62.     The administration, consummation and enforcement of the settlement as embodied in this Stipulation shall be under the authority of the Court and the Settling Parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders providing for the award of attorneys' fees and Litigation Expenses, the approval of the Plan of Allocation and the Class Distribution Order and enforcing the terms of this Settlement.

63.     The construction, interpretation, operation, effect and validity of this Settlement, and all documents necessary to effectuate it, shall be governed by the laws of the state of New York, without regard to choice-of-law principles, except to the extent that federal law requires

that federal law govern.

64.     To the extent there are disputes regarding the interpretation of any term of this Settlement, the Settling Parties will attempt to resolve any such dispute in good faith. If the Settling Parties fail to resolve the dispute, or in the event of a breach of the terms of the Settlement, any non-breaching Settling Party shall be entitled to bring an action seeking to enforce those provisions, and the exclusive forum for any such action shall be this Court.

65.     This Settlement shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arms' length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Settlement.

66.     No opinion or advice concerning the tax consequences of the Settlement to individual Settlement Class Members or any of the Settling Parties or any of the Released Parties is being given or will be given by Lead Counsel and/or Defendants' Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement. Settlement Class Members will be directed to consult their own tax advisors regarding the tax consequences of the Stipulation, and the settlement embodied herein, and any tax reporting obligations they might have with respect to it. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

67.     All time periods set forth in this Settlement shall be computed in calendar days, unless expressly provided otherwise, and pursuant to the terms of Rule 6(a) of the Federal Rules

of Civil Procedure.

  68.  Except to the extent explicitly set forth otherwise in this Settlement, if any Settling Party is required to give notice to any other Settling Party under this Settlement, such notice shall be in writing and shall be deemed to have been duly given upon (a) receipt of hand delivery; (b) mailing by means of pre-paid, overnight courier delivery service or (c) sending of electronic mail, provided that no rejection notice occurs and that identical notice is sent by United States Mail, first-class postage pre-paid or pre-paid, overnight courier delivery service. Notice shall be provided as follows:

| | |
|---|---|
| If to Lead Plaintiff or Lead Counsel: | Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue, N.W.<br>Suite 500<br>Washington, D.C. 20005<br>Attn: Steven J. Toll<br>stoll@cohenmilstein.com |
| If to Defendants or Defendants' Counsel: | Covington & Burling LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>Attn: Mark P. Gimbel<br>mgimbel@cov.com |

  IN WITNESS WHEREOF, the Settling Parties hereto have caused this Settlement to be executed, by their duly authorized attorneys as of the date first written above.

COHEN MILSTEIN SELLERS & TOLL PLLC

Steven J. Toll
Times Wang
1100 New York Avenue, N.W.
Suite 500
Washington, D.C. 20005
(202) 408-4600
stoll@cohenmilstein.com
twang@cohenmilstein.com

Christopher Lometti
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797
clometti@cohenmilstein.com

*Counsel for Lead Plaintiff*

COVINGTON & BURLING LLP

Mark P. Gimbel
Andrew W. Hahn
Joshua B. Picker
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
mgimbel@cov.com
ahahn@cov.com
jpicker@cov.com

*Counsel for Defendants*